■ In the Matter of PALMA BONORA, Deceased. GARY D. GOTLIN, as Public Administrator of Richmond County, Respondent; BRUCE L. STEIN, as Public Administrator of Kings County, Appellant. [998 NYS2d 400]—

In a proceeding pursuant to SCPA 1001 for the administration of the estate of Palma Bonora, Bruce L. Stein, as Public Administrator of Kings County, appeals, as limited by his brief, from stated portions of an order of the Surrogate's Court, Richmond County (Gigante, S.), dated March 20, 2014, which, inter alia, denied that branch of his motion which was to revoke letters of administration issued to Gary D. Gotlin, as Public Administrator of Richmond County, and granted the cross motion of Gary D. Gotlin, among other things, for a judgment declaring that the decedent was domiciled in Richmond County at the time of her death.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, that branch of the motion of Bruce L. Stein, as Public Administrator of Kings County, which was, in effect, to revoke letters of administration issued to Gary D. Gotlin, as Public Administrator of Richmond County, is granted, and the cross motion of Gary D. Gotlin, as Public Administrator of Richmond County, inter alia, for a judgment declaring that the decedent was domiciled in Richmond County at the time of her death is denied.

In September 2004, the decedent, Palma Bonora, who was then 83 years old and resided in Kings County, was admitted to a nursing home, SS Joachim and Anne Residence (hereinafter SS Joachim), which was also located in Kings County. In 2006, Neil Mauriello, a relative of the decedent, commenced a proceeding pursuant to Mental Hygiene Law article 81 for his appointment as the guardian of the personal needs and property management of the decedent, alleging that the decedent suf-

fered from dementia. In an order dated July 27, 2006, the Supreme Court, Kings County, appointed Mauriello as the guardian of the decedent's person, with the authority to choose her "place of abode including continued placement in a nursing home." In 2008, Mauriello directed the transfer of the decedent to St. Elizabeth Ann's Health Care and Rehabilitation (hereinafter St. Elizabeth), a nursing home in Richmond County, which was better able to meet her medical needs.

The decedent died intestate on July 12, 2013, while still an inpatient at St. Elizabeth. In November 2013, Gary D. Gotlin, the Public Administrator of Richmond County, commenced this proceeding pursuant to SCPA 1001 for the administration of the decedent's estate. Shortly thereafter, Bruce L. Stein, the Public Administrator of Kings County, commenced a separate proceeding for the administration of the decedent's estate in the Surrogate's Court, Kings County (see Matter of Bonora, 123 AD3d 703 [2014] [decided herewith]). Stein's counsel asserted that, at the time Stein's petition was filed, counsel was "unaware of a prior filing for such relief having been made by the Public Administrator of Richmond County." In a decree dated December 16, 2013, the Surrogate's Court, Kings County, issued letters of administration to Stein. In a subsequent decree dated December 30, 2013, the Surrogate's Court, Richmond County, issued letters of administration to Gotlin.

In January 2014, Stein moved for leave to intervene in the instant proceeding and to revoke the letters of administration issued to Gotlin, asserting that he had exclusive authority to administer the decedent's estate pursuant to SCPA 704 because letters of administration were first issued to him by the Surrogate's Court, Kings County. Stein also argued that the decedent was domiciled in Kings County at the time of her death because she lacked the capacity to change her domicile to Richmond County. Thereafter, Gotlin cross-moved, in effect, for a judgment declaring that the decedent was domiciled in Richmond County at the time of her death, and to transfer the Kings County proceeding to Richmond County. In March 2014, Gotlin moved in the Kings County proceeding to revoke the letters of administration issued to Stein by that court on the ground of lack of jurisdiction, asserting that Stein failed to cite certain distributees of the decedent's estate in his petition and thereupon serve a citation upon those distributees.

In an order dated March 20, 2014, the Surrogate's Court, Richmond County, denied that branch of Stein's motion which was to revoke the letters of administration issued to Gotlin, and granted Gotlin's cross motion for a judgment declaring that the

decedent was domiciled in Richmond County at the time of her death and to transfer the Kings County proceeding to Richmond County. Thereafter, in an order dated March 28, 2014, the Surrogate's Court, Kings County, denied Gotlin's motion, inter alia, to revoke the letters of administration issued to Stein (*see Matter of Bonora*, 123 AD3d 703 [2014] [decided herewith]).

As the Surrogate's Court, Kings County, properly determined, Stein has exclusive authority to administer the decedent's estate pursuant to SCPA 704. That section provides, in part, that "[a] person who applies in good faith therefor, and to whom letters are *first issued* from a court having jurisdiction to issue them, has exclusive authority under the letters until they are revoked" (SCPA 704 [emphasis added]). Here, letters of administration were first issued to Stein by the Surrogate's Court, Kings County, and the record supports Stein's assertion that he had applied in "good faith" for letters of administration, without notice or knowledge of the petition filed in Richmond County (SCPA 704). Further, the Surrogate's Court, Kings County, did not lack jurisdiction to issue letters of administration to Stein. Since the decedent was a domiciliary of New York State at the time of her death, the Surrogate's Court, Kings County, possessed subject-matter jurisdiction over the decedent's estate (*see* SCPA 205 [1]).

Contrary to Gotlin's contention, the Surrogate's Court, Kings County, did not lack personal jurisdiction over certain alleged distributees of the decedent. Pursuant to SCPA 1003 (2), "[e]very eligible person who has *a right to administration prior or equal to that of the petitioner* and who has not renounced must be served with process upon an application for letters of administration" (emphasis added). However, "[w]here the right of the applicant for letters of administration is superior to the right of other persons interested in the estate, process need not issue and letters will be granted upon a proper petition and due qualification" (1-13 NY Practice Guide: Probate and Estate Administration § 13.08; *see* Margaret Valentine Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 1003 at 46-47). Further, SCPA 1001 mandates the issuance of letters of administration to the public administrator where the only known distributees of a decedent are "issue of grandparents, other than aunts or uncles, on only one side" (SCPA 1001 [1] [f] [ii]). Here, Gotlin admitted in an affidavit that only second cousins on the decedent's paternal side had known relationships to the decedent, and that the decedent's relationships to three individuals, who he had initially alleged were maternal first cousins, were "undetermined at this time." Consequently, the

relationship of distributees to the decedent on her maternal side, if any, "is not definitively known" (*Matter of Giganti*, 158 Misc 2d 1050, 1053 [Sur Ct, Bronx County 1994]) and, thus, there are no distributees with a right to administration "prior or equal" to that of the public administrator so as to necessitate service of process upon those individuals (SCPA 1003 [2]). For the same reason, it was not incumbent on Stein to include the names of those individuals in his petition or serve a citation upon them pursuant to SCPA 306 (1). Accordingly, there was no jurisdictional impediment to the issuance of letters of administration to Stein by the Surrogate's Court, Kings County, and, thus, Stein has exclusive authority to administer the decedent's estate (*see* SCPA 704).

Furthermore, the county in which the decedent was domiciled at the time of her death is not determinative here. Since Stein had "exclusive authority" to administer the decedent's estate under the letters of administration issued by the Surrogate's Court, Kings County, "*until they are revoked*" (SCPA 704 [emphasis added]), improper venue would not be a valid ground for revocation of those letters of administration. "Since domicile is a waivable and nonjurisdictional concept, if a court mistakenly, without objection, exercises jurisdiction over the estate of a domiciliary of another county, its decree is not vulnerable to direct or collateral attack for lack of subject matter jurisdiction" (*Matter of Margolin*, 129 Misc 2d 735, 737 [Sur Ct, NY County 1985]; *see Sheahan v Rodriguez*, 194 Misc 2d 179, 182 [Sur Ct, Bronx County 2002]; 1-2 Warren's Heaton, Surrogate's Court Practice § 2.12).

In any event, the Surrogate's Court, Kings County, correctly determined that the decedent was domiciled in Kings County at the time of her death. The Surrogate's Court Procedure Act defines domicile as "[a] fixed, permanent and principal home to which a person wherever temporarily located always intends to return" (SCPA 103 [15]). " 'The determination of an individual's domicile is ordinarily based on conduct manifesting an intent to establish a permanent home with permanent associations in a given location' " (*Matter of Ranftle*, 108 AD3d 437, 441 [2013], *affd* 22 NY3d 1146 [2014], quoting *Matter of Clute v Chu*, 106 AD2d 841, 843 [1984]). "The law is well settled that an existing domicile continues until a new one is acquired," and "[i]t is incumbent upon the party seeking to prove a change of domicile to demonstrate such a change by clear and convincing evidence" (*Matter of Urdang*, 194 AD2d 615, 615 [1993]). "To meet this burden, the movant must establish the decedent's intention to effect a change of domicile from her [or his] acts, statements,

and conduct" (*id.*), and " '[t]he element of intent is essential' " (*id.*, quoting *Laufer v Hauge*, 140 AD2d 671, 673 [1988]). Thus, generally, "an incapacitated person's admission into a health-care facility does not cause a change of domicile if the incapacitated person is unable to express an intention to establish a new domicile" (*Matter of Urdang*, 194 AD2d at 616). Here, Gotlin failed to meet his burden of demonstrating, by clear and convincing evidence, that the decedent changed her domicile from Kings County to Richmond County, inasmuch as the record reveals that the decedent lacked the capacity to express an intention to change her domicile (*see Matter of Beasley*, 234 AD2d 32, 32-33 [1996]; *Matter of Urdang*, 194 AD2d at 616; *Matter of Ratkowsky v Browne*, 267 App Div 643, 646 [1944]; *see also Matter of Corr v Westchester County Dept. of Social Servs.*, 33 NY2d 111, 115-116 [1973]). Further, the mere fact that Mauriello was appointed guardian of the decedent's person in a Mental Hygiene Law article 81 proceeding, and given the authority to choose the decedent's "place of abode," does not warrant the conclusion that Mauriello had any authority to change the decedent's domicile (*see Matter of Lillian*, 20 Misc 3d 215, 216 [Sup Ct, Delaware County 2009], *revd on other grounds* 66 AD3d 1219 [2009]; *Brown v Brown*, 86 Misc 2d 71, 74 [Sup Ct, Kings County 1976]; *see also Antone v General Motors Corp., Buick Motor Div.*, 64 NY2d 20, 28 [1984]).

The parties' remaining contentions either are not properly before this Court, are without merit, or need not be reached in light of our determination.

Accordingly, the Surrogate's Court, Richmond County, should have granted that branch of Stein's motion which was to revoke the letters of administration issued to Gotlin by that court, and denied Gotlin's cross motion.

We decline Stein's request for the imposition of sanctions, as neither Gotlin nor his counsel engaged in sanctionable conduct on this appeal (*see* 22 NYCRR 130-1.1 [c]). Skelos, J.P., Dickerson, Chambers and Sgroi, JJ., concur.